IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NESTE OIL OYJ,                                           )
                                                        )
       Plaintiff/Counterclaim                        )
       Defendant,                                     )
                                                        )
       v.                                             )          C.A. No. 12-1744 (GMS)
                                                        )
DYNAMIC FUELS, LLC,                                     )          ███████████████████
SYNTROLEUM CORPORATION, and                             )          ███████████████████
TYSON FOODS, INC.,                                      )
                                                        )          REDACTED - PUBLIC VERSION
       Defendants/Counterclaim                        )
       Plaintiffs.                                    )
                                                        )

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO STAY THIS
LITIGATION PENDING *INTER PARTES* REVIEW OF THE PATENT-IN-SUIT**

<table>
<tr><td></td><td>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>Maryellen Noreika (#3208)<br>Michael J. Flynn (#5333)<br>1201 North Market Street</td></tr>
<tr><td>OF COUNSEL:</td><td>P.O. Box 1347<br>Wilmington, Delaware  19899</td></tr>
<tr><td>Jeanne M. Gills<br>Michael R. Houston<br>Jason A. Berta<br>FOLEY & LARDNER LLP<br>321 North Clark Street, Suite 2800<br>Chicago, Illinois  60654<br>(312) 832-4500</td><td>(302) 658-9200<br>mnoreika@mnat.com<br>mflynn@mnat.com<br><br>*Attorneys for Defendants/Counterclaim*<br>*Plaintiffs Dynamic Fuels, LLC, Syntroleum*<br>*Corporation, and Tyson Foods, Inc.*</td></tr>
</table>

Originally Filed:  May 6, 2013
Redacted Version Filed:  May 13, 2013

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

A.  THERE IS NO UNDUE PREJUDICE NOR A TACTICAL DISADVANTAGE. ........... 2

    1.  The Potential For Delay Is Greatly Reduced In The New IPR. ............................. 2

    2.  Neste's "Competition" Argument Is Misleading Given That Neste And Dynamic Fuels Are Both Part Of A Larger Market In Which Hundreds Of Companies Compete. ..................................................................................... 3

    3.  A Showing Of Hardship In Proceeding With Litigation Is Not A Requirement for a Stay, And Neste's Stale Evidence Allegation Is Mere Speculation. ........................................................................................................ 7

B.  A STAY WILL SIMPLIFY THE ISSUES AND BENEFIT THE COURT AND THE PARTIES. ................................................................................................................ 7

    1.  If The PTAB Grants The IPR Petition, The Issues Will Be Simplified. ................ 8

    2.  The PTAB Is Likely To Grant The IPR Petition. .................................................. 8

    3.  Neste's Estoppel Argument Does Not Support Denying A Motion To Stay. ......................................................................................................................... 9

    4.  Neste Ignores The Dispositive Potential Of The IPR. ......................................... 10

C.  THE EARLY STAGE OF LITIGATION CLEARLY SUPPORTS A STAY. ............... 10

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**

*Air Vent, Inc. v. Owens Corning Corp.*,
   No. 2:10-cv-01699, 2012 U.S. Dist. LEXIS 64294 (W.D. Pa. May 8, 2012) ..........................6

*Alloc, Inc. v. Unilin Decor N.V.*,
   No. 03-253-GMS, 2003 U.S. Dist. LEXIS 11917 (D. Del. July 11, 2003) ..............................9

*CCP Sys. AG v. Samsung Elecs. Corp.*,
   No. 09-CV-4354, 2010 U.S. Dist. LEXIS 128943 (D.N.J. Dec. 7, 2010)................................9

*Cooper Notification, Inc. v. Twitter, Inc.*,
   No. 09-865-LPS, 2010 U.S. Dist. LEXIS 131385 (D. Del. Dec. 13, 2010) .............................7

*Datatreasury Corp. v. Wells Fargo & Co.*,
   490 F. Supp. 2d 749 (E.D. Tex. Oct. 25, 2006) ....................................................................10

*E.I. du Pont de Nemours & Co. v. MacDermid Printing Sol'ns LLC*,
   No. 10-3409, 2010 U.S. Dist. LEXIS 101678 (D.N.J. July 23, 2012).....................................6

*Genoa Color Techs., Inc. v. Samsung Elecs., Am., Inc.*,
   No. 07-cv-6233, 2008 U.S. Dist. LEXIS 25259 (S.D.N.Y. Mar. 12, 2008)............................7

*Gold v. Johns-Manville Sales Corp.*,
   723 F.2d 1068 (3d Cir. 1983).................................................................................................7

*Life Technologies Corp. v. Illumina, Inc.*,
   No. 09-706-RK, 2010 U.S. Dist. LEXIS 55623 (D. Del. June 7, 210)....................................7

*Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*,
   No. 12-780-GMS, 2013 U.S. Dist. LEXIS 15300 (D. Del. Feb. 5, 2013)................................6

*Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*,
   No. SACV 12-21-JST, 2012 U.S. Dist. LEXIS 186322 (C.D. Cal. Dec. 19, 2012)..................8

*SenoRx, Inc. v. Hologic, Inc.*,
   No. 12-173-LPS-CJB, 2013 U.S. Dist. LEXIS 8044 (D. Del. Jan. 11, 2013) ......................6, 7

*Softview LLC v. Apple, Inc.*,
   No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012).................................................3

*Star Envirotech v. Redline Detection, LLC*,
   No. SACV 12-01861, 2013 U.S. Dist. LEXIS 58866 (C.D. Cal. Apr. 3, 2013)...................2, 8

**OTHER AUTHORITIES**

37 C.F.R. § 42.100(c)..............................................................................................................2

37 C.F.R. § 42.107(b) ...................................................................................................................2

**RULES AND STATUTES**

35 U.S.C. § 313 ...........................................................................................................................8

35 U.S.C. § 314(a) ......................................................................................................................8

35 U.S.C. § 314(b) ......................................................................................................................2

## INTRODUCTION

The Court stayed Neste's first suit against Defendants on a related patent on January 31, 2013. In its opposition to staying this second suit, Neste repeats many of the same arguments as before, which this Court previously reconciled in Defendants' favor. The feebleness of Neste's claims of "significant delay" or purported competition provides an even stronger basis to stay this case compared to Neste's prior suit.

First, the only significant difference between the suits is that the patent-in-suit here is subject to the new *inter partes* review ("IPR") procedure, rather than the predecessor *inter partes* reexamination procedure. Neste's "delay" argument is directly undercut by the fact that the Patent Trials and Appeals Board ("PTAB") is statutorily required to render a decision on Syntroleum's IPR petition no later than September 2013. Given that over 91% of IPR petitions have been granted to date, there is an overwhelming chance that the IPR will be instituted here. If the PTAB grants the IPR, it would have found a reasonable likelihood that one or more claims are invalid—which would only further support a stay. If the PTAB refuses to institute the IPR, the stay can be lifted shortly thereafter with essentially no prejudice to Neste. Either result counsels toward staying this case.

Second, the merits of Syntroleum's IPR petition favor a stay given the USPTO's prior decisions invalidating a related Neste patent ("the '018 patent") and granting Syntroleum's *inter partes* reexamination request as to a second related Neste patent ("the '344 patent"), initially finding all those claims invalid. These prior determinations reveal substantial questions as to patentability of Neste's technology, and this Court can only benefit from the USPTO's decisions as to the state of the art and given the likelihood of Neste's claims being amended or cancelled.

Finally, Neste's other arguments are either factually incorrect, mischaracterize the biomass-based diesel market in the U.S., or rely upon cases that are inapposite and did not involve

the important facts present here.  None of Neste's arguments warrant a different outcome than the stay granted in the first case.  Defendants' Motion should therefore be granted.

**ARGUMENT**

**A.     THERE IS NO UNDUE PREJUDICE NOR A TACTICAL DISADVANTAGE.**

In staying Neste's first case, this Court found that the "undue prejudice" factor weighed lightly against a stay.  (*See* Case No. 12-662, D.I. 37 at 6 ("Order")).[1]  However, the shortened time to a final decision in the new IPR proceeding shifts the balance in favor of a stay.

**1.     The Potential For Delay Is Greatly Reduced In The New IPR.**

Neste argues that the IPR "may cause significant delay."  (Resp. at 10.)  However, this Court found that the potential for delay does not, by itself, establish *undue* prejudice.  (Order at 3 (emphasis in original).)  Moreover, the potential for the IPR to cause undue prejudice is greatly diminished because "the delay caused by the new IPR procedure is significantly less than the delay caused by the old procedure."  *Star Envirotech v. Redline Detection, LLC*, No. SACV 12-01861, 2013 U.S. Dist. LEXIS 58866, at *6 (C.D. Cal. Apr. 3, 2013) (granting motion to stay pending IPR).  Thus, previous concerns with *inter partes* reexaminations potentially lasting many years are alleviated by the shortened, date-certain time frame required for the resolution of IPRs. *See* 37 C.F.R. § 42.107(b); 35 U.S.C. § 314(b); 37 C.F.R. § 42.100(c).

Neste's further argument that the early stage of this litigation must be balanced with "the even earlier stage of the proposed IPR proceeding" also fails.  (Resp. at 10.)  The IPR is progressing according to schedule, and the PTAB will issue its decision on Syntroleum's petition no later than September 2013—even earlier if Neste wishes to speed up the proceedings by filing its preliminary response sooner.  The IPR has already progressed farther than this case, and, if the

---

[1] Exhibit 14.  All Exhibits referenced herein are attached to the Declaration of Jason A. Berta, filed contemporaneously ("Berta Decl.").

PTAB grants the petition, a final decision will be rendered by approximately September 2014. Neste's reliance on *Softview LLC v. Apple, Inc.*, No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012) is thus misplaced.  That case involved an *inter partes* reexamination and an *ex parte* reexamination that were filed *more than a year after* the filing of the complaint, which is in contrast to the timeliness of Syntroleum's IPR petition and the speed of the current IPR proceedings.  As in Neste's first case, Syntroleum filed its IPR petition less than three months after this case began, and the motion to stay was filed only five days later.  (*See* D.I. 1, 18, 19-1.) Under these circumstances, "the timing of the [IPR petition] and motion to stay present no evidence that the defendants sought an unfair tactical advantage."  (Order at 3-4.)

> **2.    Neste's "Competition" Argument Is Misleading Given That Neste And Dynamic Fuels Are Both Part Of A Larger Market In Which Hundreds Of Companies Compete.**

Neste claims it will suffer "severe prejudice" because of its alleged direct competition with Dynamic Fuels in a purported two-player U.S. market for "paraffinic renewable diesel fuel." (Resp. at 8.)  Neste submits the Declaration of Neville Fernandes in support of its argument.  (*See* D.I. 25, Ex. 2.)  However, Mr. Fernandes's Declaration and Neste's brief contain many factually incorrect statements, as Neste mischaracterizes both the market in which it and Dynamic Fuels operate, as well as Neste's level of involvement in that market.

First and foremost, Neste's suggestion that it competes only against Dynamic Fuels is belied by Neste's own 2012 Annual Report, which lists not only Dynamic Fuels as a competitor, but also all of the other producers of conventional biodiesel:

| Business area | Oil Products and Renewables | |
|---|---|---|
| **Reporting segment** | **Oil Products** | **Renewable Fuels** |
| **Most significant competitors** | • Other advanced refiners in Russia, Northwest Europe, and the Middle East | • Dynamic Fuels, USA<br>• Producers of conventional biodiesel |

(Berta Decl. ¶ 3 & Ex. 15 at 6 (annotated).)   In the U.S. alone, there are hundreds of companies manufacturing conventional biodiesel.  (*Id.* ¶ 4 & Ex. 16.)   Specifically, as of March 19, 2013, there were 305 EPA-registered producers of biomass based diesel (BBD), including 292 producers of conventional biodiesel and 13 producers of renewable diesel (including both Neste and Dynamic Fuels), all competing in the same government-regulated marketplace.  (*Id.*)   Neste's Annual Report goes on to admit that, while renewable diesel and biodiesel may have different qualities, the "demand for [renewable diesel] is shaped by general developments affecting the biodiesel market."  (*Id.* ¶ 3 & Ex. 15 at 34.)   Neste's Annual Report thus confirms the undeniable fact that both it and Dynamic Fuels are part of the much larger market for BBD fuel products, and therefore compete against all producers of BBD fuels and not each other.

In an effort to buttress the alleged competition, Neste is vague regarding the extent of its participation in the U.S. marketplace for BBD fuels.  ████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████ ████[2]   In reality, Neste's true share of the market is likely far smaller because, as even Neste admits, diesel derived from palm oil and rapeseed oil does not qualify for RIN credits.  (Resp. at 7.)   Neste conveniently fails to specify how much of its alleged 2012 sales (or estimated 2013 sales) were made from animal fats, versus how much were made from "other biological materials."   However, considering that a large majority of Neste's renewable diesel is derived from palm and/or rapeseed oil (Berta Decl. ¶ 3, Ex. 15 at 36, 208), Neste's sales of diesel that can even compete in the RIN-eligible BBD market must be miniscule.

████████████████████████████████████████████████████████████

---

[2] This calculation assumes a conversion factor of 6.5 pounds per gallon, which is the approximate density of renewable diesel. *See* Declaration of Jeff Bigger ¶ 3, filed herewith ("Bigger Decl.").

███████████████████████████████████████████████████████████████████

(Bigger Decl. ¶ 3.)   The relatively small market shares of both Neste and Dynamic Fuels in the

BBD market thus show that both companies are small players in a much larger market, and that

there is effectively no direct competition between them.   This conclusion is bolstered by the fact

that Neste has not cited a single instance of competing against Dynamic Fuels in selling its

renewable diesel fuel to a customer.   ████████████████████████████████████

(*Id*. ¶ 5.)   The reality is that Neste simply does not directly compete with Dynamic Fuels.

Neste also mischaracterizes the BBD market generally.   In attempting to suggest reasons

why purchasers would choose renewable diesel over conventional biodiesel, Neste tries to make

several distinctions between the fuel types.   However, many of Neste's purported distinctions are

misleading or factually incorrect.[3]   More important is the fact that, as a practical matter, there is no

separate and distinct demand in the market for renewable diesel versus biodiesel.   (Bigger Decl.

¶ 7.)   The "oil companies" that are subject to the EPA's renewable volume obligations get RIN

credits for both biodiesel and for renewable diesel.   (Berta Decl. ¶ 7 & Ex. 19 at 4.)   The EPA

lumps biodiesel and renewable diesel together in the same category, *i.e*., biomass-based diesel

fuels, because they are all competitive products.   Moreover, to the extent a user is taking

advantage of the "drop-in" nature of renewable diesel (*i.e*., using it at a higher blend concentration

or using it like regular diesel altogether), then that product is competing against manufacturers of

conventional diesel fuel and other diesel fuel additives, which is an even larger market.

---

[3] Neste's allegation that "[b]iodiesel is also not allowed into US pipelines" is factually incorrect. At least one U.S. pipeline operator, Colonial Pipeline Company, allows both biodiesel and renewable diesel through its pipeline.   (Berta Decl. ¶ 5 & Ex. 17 at 9.)   Similarly, Neste's allegation that "[m]ajor refiners do not allow biodiesel into their refineries" is misleading because refiners do not allow *any* BBD fuels into refineries; rather, BBD is blended at terminals, not refineries.   (*See id*. ¶ 6 & Ex. 18 at 13.)   Finally, Neste's argument that supply contracts are long term (Resp. at 8) is also factually incorrect. ████████████████████████████████
████████████████████████████████████████████████████████████   (Bigger
Decl. ¶ 6.)

Neste's suggestion that it competes directly with Dynamic Fuels for animal feedstocks is likewise misleading. According to Neste's Annual Report in 2012, it did not even purchase any of its waste animal fats from the U.S. or anywhere in North America. (Berta Decl. ¶ 3 & Ex. 15 at 128.) ███████████████████████████ so there could not have been any direct competition between the parties. (Bigger Decl. ¶ 8.) ████████████

████████████████████████████████████████████████

██████████████████████ (*Id.*)   This further shows that there is, in fact, no practical competition between the parties for feedstocks.[4]

In sum, Neste cannot possibly establish likely prejudice due to irreparable harm on the part of Defendants because any U.S. sales of Neste's renewable diesel compete with the products of hundreds of other manufacturers of BBD, not just those of Dynamic Fuels.[5] *Air Vent, Inc. v. Owens Corning Corp.*, No. 2:10-cv-01699, 2012 U.S. Dist. LEXIS 64294, at *11 (W.D. Pa. May 8, 2012). Furthermore, by not requesting preliminary injunctive relief, Neste has indicated that there is no changing market condition that could lead to irreparable harm over time, and that any harm to Neste could be remedied by monetary relief. *E.I. du Pont de Nemours & Co. v. MacDermid*

---

[4] Direct competition between Neste and Dynamic Fuels is further thwarted by simple logistics. Whereas Dynamic Fuels operates in the U.S., Neste's four refineries are located Finland (2), Singapore, and the Netherlands. (Berta Decl. ¶ 3 & Ex. 15 at 44.) The costs associated with shipping either feedstocks or diesel fuel products over such long distances further discourages any direct competition to any significant degree in these respective markets.

[5] Nor does the existence of Syntroleum's lawsuit against Neste in Singapore establish direct competition. The fact that Neste is forcing Syntroleum to take action to protect its intellectual property in Singapore does not suggest that Neste and Syntroleum compete in the United States. Neste's cases are distinguishable. In *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS-CJB, 2013 U.S. Dist. LEXIS 8044, at *28-30 (D. Del. Jan. 11, 2013), the "fact of direct competition [was] not in any serious dispute" because the parties were the only two companies who participate in the balloon brachytherapy market. Conversely, *Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, No. 12-780-GMS, 2013 U.S. Dist. LEXIS 15300, at *24-25 (D. Del. Feb. 5, 2013), involved a non-practicing entity plaintiff, and there the court granted the motion to stay. Those cases did not address the disputed issues present here, namely, that there exist hundreds of other companies competing in the biomass-based diesel market.

*Printing Sol'ns LLC*, No. 10-3409, 2010 U.S. Dist. LEXIS 101678, at \*12 (D.N.J. July 23, 2012).[6]

> **3.** **A Showing Of Hardship In Proceeding With Litigation Is Not A Requirement for a Stay, And Neste's Stale Evidence Allegation Is Mere Speculation.**

Neste's argument that Defendants are required to show hardship in proceeding with litigation is contrary to the case law it cites in its own brief. *See Cooper Notification,* 2010 U.S. Dist. LEXIS 131385, \*9 ("Nowhere did the Court state that a showing of hardship or inequity in proceeding with litigation is an absolute requirement for a stay.") (citation omitted). Defendants should not be required to litigate on two fronts, especially where, as here, this case is in its infancy with no significant expenditures of time or resources, and where the PTAB will decide in a few months whether there is a "reasonable likelihood that the petitioner will prevail."[7]

Neste speculates that samples of Dynamic Fuels' product will spoil if this case is stayed. (Resp. at 11.) However, Neste's general concerns about "the pharmaceutical and chemical fields" lack the specificity required to warrant consideration of stale evidence. *See SenoRx, Inc.*, 2013 U.S. Dist. LEXIS 8044, at \*25 n.8.

**B.** **A STAY WILL SIMPLIFY THE ISSUES AND BENEFIT THE COURT AND THE PARTIES.**

In Neste'e first case, this Court found the "simplification of issues" factor leaned in favor of a stay. (Order at 10.) Because the facts of this case are similar, and because any differences

---

[6] The facts here are clearly distinguishable from Neste's additional cases. In *Life Technologies Corp. v. Illumina, Inc*., No. 09-706-RK, 2010 U.S. Dist. LEXIS 55623, at \*3 (D. Del. June 7, 210), it was not disputed that the parties were direct-competitor manufacturers of DNA Sequencers. Likewise, in *Cooper Notification, Inc. v. Twitter, Inc*., No. 09-865-LPS, 2010 U.S. Dist. LEXIS 131385, \*10 (D. Del. Dec. 13, 2010), in addition to noting that the parties were direct competitors, the court described how the patentee expressly agreed not to amend claims during reexamination, thereby reducing the benefits that a stay would provide. Here, by comparison, there are hundreds of competing entities selling BBD in the U.S.

[7] The other cases cited by Neste do not fit the facts here, as *Gold v. Johns-Manville Sales Corp*., 723 F.2d 1068, 1071 (3d Cir. 1983) was not a patent case but instead involved claims stayed pending asbestos-related bankruptcy proceedings, and *Genoa Color Techs., Inc. v. Samsung Elecs., Am., Inc*., No. 07-cv-6233, 2008 U.S. Dist. LEXIS 25259, at \*3-4 (S.D.N.Y. Mar. 12, 2008) involved discovery already underway when the *inter partes* reexamination was filed.

shift the balance in favor of a stay, this factor more strongly supports granting a stay.

### 1.    If The PTAB Grants The IPR Petition, The Issues Will Be Simplified.

By no later than September 2013, the PTAB is required to determine whether to grant Syntroleum's petition and institute the IPR.  The granting of Syntroleum's petition would indicate the PTAB's finding of a "reasonable likelihood that the petitioner will prevail," which is the threshold standard of review for IPR, as compared with the lower "substantial new question" standard used for reexaminations.  *Compare* 35 U.S.C. § 314(a) (effective Sept. 16, 2012) *with* 35 U.S.C. § 313 (pre-AIA).  Moreover, the PTAB's initial decision will be made only after reviewing arguments from both Syntroleum *and* Neste (preliminary response is due no later than June 14, 2013), whereas previously the initial determination in an *inter partes* reexamination was based solely on the request.  The courts that have recently granted motions to stay pending IPRs have noted that "the amended standards for granting *inter partes* review probably results in an even higher likelihood than under the prior standard that the issues in this action will be simplified . . ." *Semiconductor Energy Lab. Co. v. Chimei Innolux Corp*., No. SACV 12-21-JST, 2012 U.S. Dist. LEXIS 186322, at *7 (C.D. Cal. Dec. 19, 2012); *Star Envirotech v. Redline Detection, LLC*, No. SACV 12-01861, 2013 U.S. Dist. LEXIS 58866, at *5 (C.D. Cal. Apr. 3, 2013).

### 2.    The PTAB Is Likely To Grant The IPR Petition.

As of the date of this reply brief, the PTAB has instituted IPRs in 56 out of 61 petitions (91.8 %) that have been decided thus far.  (Berta Decl. ¶¶ 8-9.)  Therefore, it is statistically very likely that the PTAB will institute IPR of the '094 patent.

The PTAB is also likely to grant Syntroleum's petition because the IPR will allow the PTAB an opportunity to review the '094 patent in view of prior art not previously considered by the Examiner.  Neste's suit is seeking to enforce patent claims that are markedly similar to what is taught by the prior art reference CZ Pat. No. 283575, which was not submitted by Neste nor considered by the USPTO during prosecution of the '094 patent.  (*See* Defs.' Br. at 9-11.)  The

IPR will also afford the PTAB an opportunity to correct an error made by the Examiner who was misled by Neste's misrepresentations concerning the prior art reference EP 1396531, which inherently discloses the '094 claim limitations for phosphorous and metals. (*See id*. at 11-13.) At the very least, this Court would benefit from the PTAB's evaluation of the technical characteristics of the feed stocks disclosed in the prior art references and claimed in the '094 patent, especially as it relates to the substantial patentability questions raised already against Neste's '018 patent (invalidated) and '344 patent (undergoing *inter partes* reexamination).[8] *Cf. Alloc, Inc. v. Unilin Decor N.V.*, No. 03-253-GMS, 2003 U.S. Dist. LEXIS 11917 (D. Del. July 11, 2003) (staying case where several patents in the same family as the patent-in-suit were under reexamination). It is therefore both statistically and substantively likely that the issues will be simplified as a result of the IPR, thus warranting a stay of this litigation.

### 3. Neste's Estoppel Argument Does Not Support Denying A Motion To Stay.

Neste's argument that "Dynamic Fuels and Tyson Foods may argue they are not estopped from relitigating any issues because they are not parties to the IPR" is not a factor that supports the denial of a stay. Whether one defendant, multiple defendants, or even a non-party becomes the requester of an IPR, courts have still concluded that simplification of the litigation supports a stay. (*See* Order at 9); *CCP Sys. AG v. Samsung Elecs. Corp*., No. 09-CV-4354, 2010 U.S. Dist. LEXIS 128943, at *10 (D.N.J. Dec. 7, 2010) (finding that simplification of the litigation supported a stay where only one of two defendants requested reexamination). To the extent that the claims of the '094 patent are cancelled during the IPR, then it will not matter that only Syntroleum is party to the IPR because the litigation will necessarily be simplified. (Order at 8.) To the extent that the claims of the '094 patent survive the IPR, and if the requested stay is granted, then Tyson Foods

---

[8] The invalidity positions as to the '094 patent and the '344 patent overlap. For instance, Swedish Patent No. 520633 is cited in both the '344 reexamination and in the '094 IPR.

and Dynamic Fuels will stipulate to being estopped to the same extent that Syntroleum would be estopped by virtue of the IPR. *See Datatreasury Corp. v. Wells Fargo & Co.*, 490 F. Supp. 2d 749, 755 (E.D. Tex. Oct. 25, 2006) (stay granted where all defendants would stipulate to estoppel).

### 4. Neste Ignores The Dispositive Potential Of The IPR.

Neste argues that the IPR will not benefit the Court because the Defendants' Answers raised many issues that the PTO cannot resolve, such as the affirmative defenses of ensnarement and prosecution history estoppel. (Resp. at 13-14.) As this Court found in Neste's first case, if the USPTO cancels the claims of the patent-in-suit, "it would effectively end the case and render moot any concerns about the scope of the reexamination process." (Order at 8.)

## C. THE EARLY STAGE OF LITIGATION CLEARLY SUPPORTS A STAY.

This Court previously found with respect to Neste's first case that the "stage of litigation" factor weighed heavily in favor of granting the stay. (*See* Order at 10-11.) The factual circumstances of this case with respect to timing are nearly identical and therefore warrant a stay. Specifically, the IPR was filed prior to any scheduling order being in place in this case, less than three months after litigation began, and less than one month after the Defendants' Answers were due. Furthermore, the parties have incurred little, if any, resources with respect to scheduling, discovery disputes, or motion practice. Neste offers no argument as to why the Court should not find this factor to weigh heavily in favor of Defendants, as it did in the first case.[9]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court stay this action in its entirety pending the outcome of the IPR of the '094 patent.

---

[9] Defendants fail to see how the statistic cited by Neste as to the average time to trial in this District for civil cases changes the fact that this litigation is in its earliest stages. Moreover, the statistic is not completely germane, as it does not distinguish between patent and non-patent cases.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*
Maryellen Noreika (#3208)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899
(302) 658-9200
mnoreika@mnat.com
mflynn@mnat.com

OF COUNSEL:

Jeanne M. Gills
Michael R. Houston
Jason A. Berta
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, Illinois 60654
312-832-4500

May 6, 2013

*Attorneys for Defendants/Counterclaim
Plaintiffs Dynamic Fuels, LLC, Syntroleum
Corporation, and Tyson Foods, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 13, 2013, upon the following in the manner indicated:

John W. Shaw, Esquire                                          *VIA ELECTRONIC MAIL*
Karen E. Keller, Esquire
Stephanie O'Byrne, Esquire
SHAW KELLER LLP
300 Delaware Avenue
Wilmington, DE  19801
*Attorneys for Plaintiff*

Michael J. Flibbert, Esquire                                 *VIA ELECTRONIC MAIL*
Megan R. Leinen, Esquire
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC  20001-4413
*Attorneys for Plaintiff*

/s/ *Michael J. Flynn*
_____
Michael J. Flynn (#5333)