IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NESTE OIL OYJ,                          )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )       Civil Action No.  12-1744-GMS
                                        )
DYNAMIC FUELS, LLC,                     )
SYNTROLEUM CORPORATION, and             )
TYSON FOODS, INC.,                      )
                                        )
            Defendants.                 )

## MEMORANDUM

## I.    INTRODUCTION

The plaintiff, Neste Oil Oyj ("Neste") brought this patent infringement suit against

Dynamic Fuels, LLC ("Dynamic Fuels"), Syntroleum Corporation ("Syntroleum"), and Tyson

Foods, Inc. ("Tyson Foods") on December 21, 2012, alleging infringement of U.S. Patent No.

8,212,094 (the "'094 Patent"). (D.I. 1.)  On March 8, 2013, Syntroleum filed a petition for *inter*

*partes* review of the '094 Patent with the U.S. Patent and Trademark Office ("the PTO"). (D.I.

18 at 1.)  The defendants then filed the present Motion to Stay Litigation Pending *Inter Partes*

Review of the Patent-In-Suit on March 13, 2013.  (D.I. 17.)   For the reasons that follow, the

court will grant the defendants' motion and order a stay of the litigation pending *inter partes*

review of the '094 Patent.

## II.   BACKGROUND

Neste is the owner of the '094 Patent, which is titled "Process for the Manufacture of

Diesel Range Hydrocarbons." (D.I. 19 at Ex. 1.) The '094 Patent is directed to the manufacture

of diesel range hydrocarbons from a fresh feed stream consisting of bio-renewable feedstock

such as oils or fats from plants and/or animals. (D.I. 24 at 2.) Neste alleges that the defendants

produce a competing renewable biodiesel product employing a process that directly infringes the

'094 Patent. (D.I. 1 at ¶ 15.) An earlier infringement action filed by Neste against the defendants

remains pending in this court.[1]

## III.    STANDARD OF REVIEW

A decision to stay litigation lies within the sound discretion of the court and represents an

exercise of the court's "inherent power to conserve judicial resources by controlling its own

docket." *See Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985); *Nokia*

*Corp. v. Apple, Inc.*, No. 09-791-GMS, 2011 WL 2160904, at *1 (D. Del. June 1, 2011); *Wall*

*Corp. v. BondDesk Group, L.L.C.*, No. 07-844-GMS, 2009 WL 528564, at *1 (D. Del. Feb. 24,

2009). It is well settled that this authority extends to patent cases in which a review by the PTO

has been requested. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) ("Courts

have inherent power to manage their dockets and stay proceedings, including the authority to

order a stay pending conclusion of a PTO reexamination.").

The court considers the following three factors when deciding whether to stay a case: "(1)

whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving

party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether

discovery is complete and whether a trial date has been set." *First Am. Title Ins. Co. v. McLaren*

---

[1] In that earlier suit, Neste alleges infringement of U.S. Patent No. 8,187,344 (the "'344 Patent"). *Neste Oil Oyj v. Dynamic Fuels, LLC*, No. 12-662-GMS. On January 31, 2013, the court granted the defendants' motion to stay the 12-662 action pending *inter partes* reexamination of the '344 Patent. *See* 2013 WL 424754 (D. Del. Jan. 31, 2013).

2

*LLC*, 2012 WL 769601, at *4 (D. Del. Mar. 9, 2012) (quoting *Xerox Corp. v. 3 Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)).

## IV. DISCUSSION

The court finds that these three factors, when taken together, favor granting the defendants' motion to stay. The court will discuss each consideration in turn.

### A. Undue Prejudice

The first factor the court weighs is whether granting a stay would cause the nonmoving party undue prejudice or place it at a clear tactical disadvantage. The court notes that staying a case pending PTO review risks prolonging the final resolution of the dispute and thereby may result in some inherent prejudice to the plaintiff. *Textron Innovations, Inc. v. Toro Co.*, No. 05-486-GMS, 2007 WL 7772169, at *2 (D. Del. Apr. 25, 2007). The mere potential for delay, however, is insufficient to establish *undue* prejudice. *See SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS-CJB, 2013 WL 144255, at *7 (D. Del. Jan. 11, 2013); *Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*, No. 09-571-JJF, 2010 WL 2573925, at *3 (D. Del. June 25, 2010). To better gauge the likelihood of such prejudice arising, the court has considered a number of sub-factors, including "the timing of the request for reexamination, the timing of the request for stay, the status of the reexamination proceedings and the relationship of the parties." *Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011).

#### 1. Timing of the review and stay requests

Courts have expressed reluctance to grant a stay where the timing of the request for PTO review or reexamination suggests a dilatory intent on the movant's part. *See Belden Techs. Inc. v. Superior Essex Commc'ns LP*, No. 08-63-SLR, 2010 WL 3522327, at *2 (D. Del. Sept. 2,

3

2010) ("A request for reexamination made well after the onset of litigation followed by a subsequent request to stay may lead to an inference that the moving party is seeking an inappropriate tactical advantage.") Likewise, a delay in filing a motion to stay may indicate that the movant sought to gain an improper tactical advantage. *See St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*, No. 01-557-JJF, 2003 WL 25283239, at *1 (D. Del. Jan. 30, 2003) (noting "the fact that the instant motion was filed after the close of discovery and weeks before the commencement of the scheduled trial date" supported an inference that the defendants were unfairly seeking a tactical advantage).

Neste commenced the present action on December 20, 2012, (D.I. 1), and Syntroleum filed its petition for *inter partes* review of the '094 Patent on March 8, 2013, less than three months after receiving notice of the lawsuit. (D.I. 18 at 1.) The defendants then filed their motion to stay only a few days later, on March 13, 2013. (D.I. 17.) Given the prompt filing of both the petition for *inter partes* review and the motion to stay, the court cannot discern an improper dilatory motive.

2. Status of the review

The early stage of the review proceedings, on the other hand, does increase the risk of prejudice here. The PTO has not yet decided whether to grant Syntroleum's petition, (D.I. 18 at 1–2), and, if the review should ultimately go forward, these proceedings can be expected to last into 2015.[2] As suggested above, almost any delay carries the risk of some prejudice to the

---

[2] As the court recently explained in *Davol, Inc. v. Atrium Medical Corp.*, No. 12-958-GMS, 2013 WL 3013343 (D. Del. June 17, 2013), "[u]nder the new *inter partes* review procedures, the Director of the PTO must decide whether to grant review within six months of a petition being filed . . . and the PTO must then complete its review and issue a final determination within eighteen months." *Id.* at *2 (citing 35 U.S.C. §§ 314(b), 316(a)(11); 37 C.F.R. § 42.107). The PTO's decision on whether to grant review of the '094 Patent is expected around September 2013. (D.I. 18 at 1–2.)

nonmoving party, and the delay that would result from a stay of this action has the potential to be lengthy.

     3. Relationship between the parties

     Courts are hesitant to grant a stay in a matter where the parties are direct competitors. *See Davol, Inc. v. Atrium Med. Corp.*, No. 12-958-GMS, 2013 WL 3013343, at *3 (D. Del. June 17, 2013); *ImageVision.Net, Inc. v. Internet Payment Exchange, Inc.*, No. 12-54-GMS-MPT, 2013 WL 663535, at *6 (D. Del. Feb. 25, 2013), *recommendation adopted*, 2013 WL 1743854 (D. Del. Apr. 22, 2013); *Cooper Notifications, Inc. v. Twitter, Inc.*, No. 09-865-LPS, 2010 WL 5149351, at *5 (D. Del. Dec. 13, 2010); *Textron Innovations, Inc.*, 2007 WL 7772169 at *3. In such cases, "there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill." *Neste Oil Oyj v. Dynamic Fuels, LLC*, No. 12-662-GMS, 2013 WL 424754, at *2 (D. Del. Jan. 31, 2013) (quoting *SenoRx, Inc.*, 2013 WL 144255, at *5). The presence of multiple active firms in the relevant market, however, may decrease the likelihood of such harm befalling the plaintiff. *Id.* at *3; *Air Vent, Inc. v. Owens Corning Corp.*, No. 10-1699-TFM, 2012 WL 1607145, at *3 (W.D. Pa. May 8, 2012).

     While it is uncontested that the parties are competitors, there is some dispute as to the practical scope of the market in which they operate. Neste emphasizes that it and Dynamic Fuels are the only two companies that "compete directly to supply a paraffinic renewable diesel fuel to the U.S. market." (D.I. 24 at 6.) The defendants, however, suggest that Neste mischaracterizes the biomass-based diesel market, unnecessarily narrowing it to include only "paraffinic

5

renewable diesel fuel" and not regular biodiesel. (D.I. 29 at 4.) In the defendants' view,

Dynamic Fuels and Neste represent only two of the many firms competing in a broad market for

government subsidies known as Renewable Identification Numbers ("RINs"), which serve as

credit for the production of biomass-based diesel fuel. (D.I. 18 at 19.) The defendants explain

that the term "biomass-based diesel" encompasses both renewable diesel and biodiesel and that

"[t]here are many hundreds of energy firms that manufacture biomass-based diesel, which all

compete for the sale of RINs." (*Id.* at 19 n.6.) Having considered the parties' arguments on this

point, the court believes that they are merely indirect competitors in the large, subsidy-driven

market for biomass-based diesel.[3]

Additionally, "[w]here the question of 'direct competition' remains unanswered, courts

have sometimes considered whether the plaintiff sought a preliminary injunction." *Neste Oil*

*Oyj*, 2013 WL 424754, at *3; *see also SenoRx, Inc.*, 2013 WL 144255, at *8; *see also Ever Win*

*Int'l Corp. v. Radioshack Corp.*, No. 11-1104-GMS-CJB, 2012 WL 4801890, at *7 (D. Del. Oct.

9, 2012). The decision by a litigant to seek such injunctive relief may suggest that the parties, in

fact, do compete and that real prejudice will flow from the imposition of a stay. *See SenoRx,*

*Inc.*, 2013 WL 144255, at *8. Here, Neste has failed to seek a preliminary injunction against any

---

[3] The court is largely unpersuaded by Neste's arguments regarding the practical size of the market. Neste emphasizes that it and Dynamic Fuels are the only two companies that presently compete to sell paraffinic renewable diesel fuel in the U.S. market and suggests that there exists a distinct market for such renewable diesel because "refiners will not allow biodiesel into their refineries and because biodiesel is not allowed into common carrier pipelines." (D.I. 24 at 8.) The defendants, however, point out that *no* biomass-based diesel fuels are allowed into refineries and that at least one U.S. pipeline operator does permit biodiesel. (D.I. 29 at 5 n.3.) The court is similarly unconvinced by Neste's observation that it and Dynamic Fuels directly compete in their purchase of animal fat feedstocks. (D.I. 24 at 9) While Dynamic Fuels purchases its waste animal fats in the U.S., Neste makes its purchases outside of North America. (D.I. 29 at 6.) Moreover, the court notes that Dynamic Fuel's 2012 purchases of animal fats represented less than 1% of the total U.S. production. (*Id.*)

For these reasons and having studied the parties' briefing on this question, the court takes the same position it adopted in granting a stay of the 12-662 action and "accepts the defendants' position that the larger biomass-based diesel fuel industry represents the true 'market' for purposes of the analysis." *See Neste Oil Oyj*, 2013 WL 424754, at *3 (D. Del. Jan. 31, 2013).

of the defendants. In light of this failure and the above determination that the relevant market is actually quite broad, the court does not believe the parties are "direct competitors" such that this sub-factor should weigh against a stay.

Neither the timing of the request for *inter partes* review nor the timing of the stay request indicate that the defendants seek an unfair tactical advantage, and the court cannot say that the parties are direct competitors given the size of the market in which they operate. While the early stage of the *inter partes* review proceedings does present some cause for concern, it cannot overcome the weight of these other sub-factors. The court does not believe Neste is likely to be unduly prejudiced by a stay of this litigation.

B.     Issue Simplification

The second factor the court considers is "whether a stay will simplify the issues in question and trial of the case." *Xerox Corp.*, 69 F. Supp. 2d at 406. There are a number of ways staying a case pending PTO review can simplify litigation:

> (1) all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated, (3) if patent is declared invalid, the suit will likely be dismissed, (4) the outcome of the reexamination may encourage a settlement without further involvement of the court, (5) the record of the reexamination would probably be entered at trial, reducing the complexity and the length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pre-trial conferences and (7) the cost will likely be reduced both for the parties and the court.

*Gioello Enters. Ltd. v. Mattel, Inc.*, No. 99-375-GMS, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001).

The defendants argue that a stay is warranted here because the case will be streamlined if some or all of the '094 Patent's claims are cancelled or amended. (D.I. 18 at 14.) The

7

defendants also contend that a stay pending *inter partes* review will allow the court to benefit from the PTO's expertise regardless of whether or not the review results in any claim cancellation. (*Id.* at 15.) Neste, on the other hand, points out that: (1) *inter partes* review has yet to be granted, (2) even if review does occur, the challenged claims may survive; (3) the two defendants not involved in the review (Dynamic Fuels and Tyson Foods) may not be estopped from reasserting issues raised in the PTO; and (4) the case involves disputes that cannot be resolved by the *inter partes* review. (D.I. 24 at 12–14.)

The court believes this factor weighs in favor of the defendants' stay request. While Neste is correct that PTO has yet to render a decision on Syntroleum's petition, the statistics referenced by the defendants suggest that it will likely grant review.[4] (D.I. 29 at 8.) Further, if *inter partes* review is granted here, the stricter standard for instituting such review suggests a greater likelihood that the PTO will cancel at least some of the challenged claims.[5] *See Universal Elecs., Inc. v. Universal Remote Control, Inc.*, No. 12-329-AG, 2013 WL 1876459, at *4 (C.D. Cal. May 2, 2013).

Neste's estoppel argument is also unconvincing. The defendants correctly note that, if the claims of the '094 Patent are cancelled during review, it will not matter that Dynamic Fuels and Tyson Foods were not parties to those proceedings. (D.I. 29 at 9.) Moreover, if claims do

---

[4] As of May 6, 2013, the PTO had issued decisions on sixty-one petitions and instituted *inter partes* review in fifty-six of those cases. (D.I. 29 at 8.)

[5] The "substantial new question of patentability" standard that previously controlled the grant of *inter partes* reexaminations has been replaced in the *inter partes* review context by a threshold requirement that the petition establish "a reasonable likelihood that the petitioner [will] prevail with respect to at least [one] of the claims challenged in the petition." 35 U.S.C. § 314(a). "If the PTO cancelled at least some of the challenged claims in 89% of *inter partes* reexaminations, it seems likely that this percentage will be higher in *inter partes* reviews, because the *inter partes* review requests granted by the PTO must satisfy a more restrictive standard." *Universal Elecs., Inc.*, 2013 WL 1876459, at *4.

8

survive the review, Dynamic Fuels and Tyson Foods have agreed to stipulate "to being estopped to the same extent that Syntroleum would be estopped by virtue of the [*inter partes* review]." (*Id.* at 10.)

Finally, while the court recognizes that this case likely presents certain questions that simply cannot be addressed through *inter partes* review, it notes that the "issue simplification" factor does not require complete overlap.

C.    Stage of Litigation

The court next considers the stage of litigation, asking "whether discovery is complete and whether a trial date has been set." *First Am. Title Ins. Co.*, 2012 WL 769601, at \*4. Staying a case in its early stages "can be said to advance judicial efficiency and maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims." *SenoRx, Inc.*, 2013 WL 144255, at \*5 (internal quotation omitted). On the other hand, when a party moves to stay an action that has already reached its later stages, it is likely that "the Court and the parties have already expended significant resources . . . and the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion." *Id.*

This factor weighs strongly in favor of granting a stay, as the present case is in its infancy. There has been no scheduling conference, no trial date has been set, and no discovery has taken place. (D.I. 23 at 20.)

**V.    CONCLUSION**

Balancing the three factors discussed above, the court finds that a stay is warranted here. There appears to be little risk that Neste will suffer undue prejudice as a result of a stay.

9

Additionally, Syntroleum's *inter partes* review petition offers an opportunity for substantial issue simplification, and the fact that this case remains in its earliest stages only increases the prospect that a stay pending review will advance the interests of judicial economy. Accordingly, the court will grant the defendants' Motion to Stay Litigation Pending *Inter Partes* Review of the Patent-In-Suit.

Dated: July 2, 2013

CHIEF, UNITED STATES DISTRICT JUDGE

10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NESTE OIL OYJ,                          )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )          Civil Action No.  12-1744-GMS
                                        )
DYNAMIC FUELS, LLC,                     )
SYNTROLEUM CORPORATION, and             )
TYSON FOODS, INC.,                      )
                                        )
            Defendants.                 )
                                        )

## ORDER

At Wilmington this 2ⁿᵈ day of July 2013, consistent with the memorandum opinion

issued this same date, IT IS HEREBY ORDERED THAT:

The defendants' Motion to Stay Litigation Pending *Inter Partes* Review of the Patent-In-

Suit (D.I. 17) is GRANTED.

_____
CHIEF, UNITED STATES DISTRICT JUDGE